J-S82030-17

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| IN THE INTEREST OF: K.G., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: C.G., NATURAL FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1307 WDA 2017 |

Appeal from the Order Dated August 15, 2017
in the Court of Common Pleas of Bedford County
Orphans' Court at No(s): CP-05-DP-0000048-2017

BEFORE: BENDER, P.J.E., STEVENS, P.J.E.,* and STRASSBURGER, J.**

MEMORANDUM BY STEVENS, P.J.E.: FILED FEBRUARY 1, 2018

Appellant, C.G. ("Father"), files this appeal from the order[1] of the Bedford County Court of Common Pleas, adjudicating his minor daughter, K.G. ("Child," born September 2007), dependent pursuant to 42 Pa.C.S.A. § 6302. Child remained in the legal custody of Bedford County Children and Youth

_____

[1] This order, dated August 15, 2017, was stamped filed and docketed by Bedford County's Prothonotary's Office on August 25, 2017. There is no notation on the docket or otherwise that notice was ever given and that the order was entered for purposes of Pa.R.C.P. 236(b). See *Frazier v. City of Philadelphia*, 735 A.2d 113, 115 (Pa. 1999) (holding that "an order is not appealable until it is entered on the docket with the required notation that appropriate notice has been given"); Pa.R.A.P. 108(a) (entry of an order is designated as "the day on which the clerk makes the notation in the docket that notice of entry of the order has been given as required by Pa.R.C.P. 236(b)"). However, it would be a waste of judicial resources to remand the matter solely for the filing of Rule 236(b) notice. Thus, in the interest of judicial economy, we reach the merits of the case. We caution the Prothonotary's Office as to compliance with these rules.

_____
* Former Justice specially assigned to the Superior Court.
** Retired Senior Judge assigned to the Superior Court.

Services ("CYS") and was placed with her maternal grandparents. We vacate the dependency order and remand for a new adjudicatory hearing.

Since 2013, CYS has been involved with the welfare of Child, who was in the custody of her mother, C.W. ("Mother") and Mother's husband ("Stepfather"). The couple also had the custody of Child's half-sibling, C.S. CYS had received information about Mother's home that reported deplorable home conditions, lack of food in the home, lack of electricity, no running water, poor personal hygiene, domestic violence between Mother and Stepfather, and drug and alcohol abuse by both Mother and Stepfather.

CYS attempted to provide Mother with aid on multiple occasions during these years.[2] In March 2017, CYS provided the couple with a dumpster to clean out garbage from the home, but the couple never utilized it. In May 2017, Mother told CYS her family was moving to Fulton County. However, CYS could not locate the family in Fulton or Bedford County for an extended period of time.

On August 2, 2017, CYS received another report that Mother's home had deplorable conditions including sewage backed up in the yard, no electricity, and no running water. The report indicated that Mother and Stepfather had not paid the landowner any rent since January 2017. It appeared that the children were staying with family members for the summer months, but were to return to Mother's home before school started.

_____

[2] The complete factual history of CYS's involvement in this case has not been fully documented in the record.

On August 3, 2017, a caseworker attempted to visit the home to assess the condition of the home and discuss the reported conditions with the parents; however, Stepfather refused to allow the caseworker to speak to Mother or to enter the residence. The caseworker smelled sewage in the air when she exited her vehicle and walked on the property.

On August 4, 2017, CYS filed an emergency order for protective custody. The lower court granted this order and transferred physical custody of Child to Father, who resides in Maryland and has exercised periods of partial custody of Child. On August 7, 2017, a shelter care hearing was held at which Father was present. The trial court granted a continuance until August 10, 2017 for further investigation of Mother's home by CYS. Father indicated that he would not be able to return that week, but clearly indicated he wished to pursue custody of Child. In an order dated August 10, 2017 and entered August 14, 2017, physical custody was maintained with Father.

Thereafter, CYS filed a dependency petition on August 11, 2017, and an adjudicatory hearing was scheduled for August 15, 2017. At this hearing, the court adjudicated Child dependent.[3] The court further maintained legal custody with CYS, but transferred physical custody to maternal grandparents. Father was not present on August 15, 2017 at the adjudicatory hearing.[4] On

_____

[3] Throughout the dependency proceedings, Child was represented by a guardian ad litem.

[4] We note that Father filed for custody of Child and a hearing was scheduled for December 14, 2017. Notes of Testimony ("N.T."), 8/7/17, at 3, 5.

September 11, 2017, Father, through counsel, filed a notice of appeal, along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).  In lieu of an opinion, by order dated October 17, 2017, and entered October 18, 2017, the trial court referred this Court to the transcript for purposes of Rule 1925(a).

On appeal, Father raises the following issues for our review:

A.      Whether the lower court erred and abused its discretion by proceeding with the adjudicatory hearing, as the Appellant did not have proper notice of the hearing, and was not aware of the proceeding?

B.      Whether the lower court erred and abused its discretion by adjudicating the minor child dependent, as the non-custodial parent was ready, willing, and able to care for the child?

Father's Brief at 4.[5]

At the outset, our standard of review for dependency cases is as follows:

[T]he standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law. Accordingly, we review for an abuse of discretion.

In re R.J.T., 608 Pa. 9, 26, 9 A.3d 1179, 1190 (2010) (citations omitted); see also In re L.Z., 631 Pa. 343, 360, 111 A.3d 1164, 1174 (2015).

Regarding the portion of Section 6302 that is pertinent to the present case, our Court has stated:

_____

[5] Notably, Child's guardian ad litem, counsel for CYS, and counsel for Mother all filed letters indicating they would not submit briefs in this matter.

- 4 -

> [T]o adjudicate a child dependent, a trial court must determine, by clear and convincing evidence, that the child:
>
>> is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals. A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian or other custodian that places the health, safety or welfare of the child at risk.
>
> 42 [Pa.C.S.A.] § 6302. "Clear and convincing" evidence has been defined as testimony that is "so clear, direct, weighty, and convincing as to enable the trier of facts to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." In re C.R.S., 696 A.2d 840, 843 (Pa.Super. 1997) (citation omitted).
>
> In accordance with the overarching purpose of the Juvenile Act "[t]o preserve the unity of the family wherever possible," see 42 [Pa.C.S.A.] § 6301(b)(1), "a child will only be declared dependent when he is presently without proper parental care and when such care is not immediately available." In re R.T., [ ] 592 A.2d 55, 57 (Pa.Super. 1991) (citation omitted). This Court has defined "proper parental care" as "that care which (1) is geared to the particularized needs of the child and (2) at a minimum, is likely to prevent serious injury to the child." In re C.R.S., supra at 845 (citation omitted).

In re A.B., 63 A.3d 345, 349 (Pa.Super. 2013).

Critically, as to service of a dependency petition, Pennsylvania Rule of Juvenile Court Procedure 1331 provides as follows:

RULE 1331. SERVICE OF PETITION

A. Copy. Upon the filing of a petition, a copy of the petition shall be served promptly upon the child, the child's guardian, the child's attorney, the guardian's attorney, the attorney for the county agency, and the county agency.

B. Method of Service.

 1) Child and guardian.  The petition shall be served upon the child and all of the child's guardians by:

 a) certified mail, return receipt requested and first-class mail; or

 b) delivery in-person.

 2) Attorneys and the county agency.  The petition shall be served upon the attorneys and county agency by:

 a) first-class mail;

 b) delivery in-person; or

 c) another agreed upon alternative method.

C.  Proof of service.  An affidavit of service shall be filed prior to the adjudicatory hearing.

Pa.R.J.C.P. 1331.

Further, Rule 1361 requires the following as to the provision of notice of an adjudicatory hearing:

Rule 1361. Adjudicatory Notice

The court shall give notice of the adjudicatory hearing to:

(1)    the attorney for the county agency;

(2)    the child's attorney;

(3)    the guardian's attorney;

(4)    the parents, child's foster parent, preadoptive parent, or relative providing care for the child;

(5)    the county agency;

(6)    the court appointed special advocate, if assigned; and

(7)     any other persons as directed by the court.

Pa.R.J.C.P. 1361.

Pursuant to Rule 1360, the court "shall issue a summons compelling all parties to appear for the adjudicatory hearing." Pa.R.J.C.P. 1360; see also 42 Pa.C.S.A. § 6335. The requirements for the summons, in relevant part, are as follows:

Rule 1360. Adjudicatory Summons

. . .

(C) Requirements. The summons shall:

(1) be in writing;

(2) set forth the date, time, and place of the adjudicatory hearing;

(3) instruct the child and the guardian about their rights to counsel, and if the child's guardian is without financial resources or otherwise unable to employ counsel, the right to assigned counsel;

(4) give the warning stating that the failure to appear for the hearing may result in arrest; and

(5) include a copy of the petition unless the petition has been previously served.

Pa.R.J.C.P. 1360(C). The rules also designate the time of service, providing that "[i]f the child is in protective custody, the summons shall be served no less than seven days prior to the adjudicatory hearing." Pa.R.J.C.P. 1363.

Moreover, this Court has held that:

"The summons shall be served[ ] (1) in-person; or (2) by certified mail, return receipt and first-class mail[,]" and the serving party must file an affidavit of service. Pa.R.J.C.P. 1363(A), (C). If the serving party does not file an affidavit of service, then "the serving party shall advise the court of what efforts were made to notify a

- 7 -

person. The court may proceed to a hearing upon a showing of reasonable efforts to locate and notify all persons pursuant to Rule 1360." Pa.R.J.C.P. 1363(D).

In the Interest of K.S., 159 A.3d 535, 539 (Pa.Super. 2017). Lastly, and most importantly, prior to commencing the adjudicatory hearing, the trial court is mandated to determine "whether notice requirements pursuant to Rules 1360 and 1361 have been met." Pa.R.J.C.P. 1406(A)(1)(a).

Father argues that the trial court erred in proceeding with the adjudicatory hearing without confirming proper service and notice. Father specifically indicates that no affidavit of service was filed on the docket and points out that the trial court made no attempt to determine whether Father received service of the dependency petition or notice of the adjudicatory hearing. Although counsel for CYS allegedly attempted to make a phone call to Father to notify him of the hearing, counsel acknowledged uncertainty as to Father's awareness and/or knowledge of the hearing. Father argues that such efforts at location and notification do not amount to reasonable efforts, do not comply with the rules regarding service and notice, and require a new adjudicatory hearing. Further, Father contends that if given proper notice, he would have appeared to testify that he was, in fact, willing and able to care for Child.

In so arguing, Father references In the Interest of K.S., 159 A.3d 535 (Pa.Super. 2017), in which a panel of this Court found that an incarcerated mother, who was not permitted by the correctional facility to participate in the shelter care hearing via telephone or video, was not provided with notice of

an adjudicatory hearing held immediately following the shelter care hearing, thereby requiring a new hearing.  K.S., 159 A.3d at 539-40.

Upon review, we agree with Father.  The record reveals the trial court failed to comply with the above service and notice requirements.  The dependency petition was filed on August 11, 2017 and an adjudicatory hearing scheduled for just four days later, on August 15, 2017.  The docket does not reflect an affidavit of service as to the dependency petition, nor does the petition contain any certification or other indication with respect to service.  The record, likewise, is devoid of a summons or affidavit of service regarding the adjudicatory hearing.

Although there is an order scheduling the adjudicatory hearing, this order was not filed until only one day prior to the hearing, on August 14, 2017, far short of the seven days required by Rule 1363.[6]  It, therefore, strains credulity to believe that Father actually received the dependency petition or any notification of the adjudicatory hearing prior to the hearing.  Relatedly, counsel for CYS himself noted the speed with which the adjudicatory hearing came up, indicating that CYS had not yet had the opportunity to assess Father's residence.  N.T., 8/15/17, at 5.

Further, the court did not make any attempt to ascertain that the notice requirements as to the adjudicatory hearing were met and/or that reasonable efforts at locating and notifying Father were made.  In fact, the transcript from

_____

[6] For reasons which are unknown, the date on this order is partially whited-out, as is the time stamp reflecting filing.

- 9 -

the adjudicatory hearing contradicts any such contention and suggests to the contrary. At the hearing, counsel for CYS candidly admitted a lack of knowledge as to whether Father was aware of the adjudicatory hearing, stating, ". . .[W]e just called the residence -- the phone number we had for the father in Maryland, the only number we had for him and according to -- it was his aunt's house, where he was staying. He's on vacation and we don't know if he's aware of this hearing or not." Id. at 10.

Despite this admission, as well as counsel's acknowledgment that CYS had to give preference to a natural parent who was ready, willing, and able to care for the child, the lower court chose to adjudicate Child dependent and place her in maternal grandparents' physical custody, without testimony.[7] Id. at 10-11. In response to counsel's advisement regarding potential lack of notice to Father, the court merely stated, "Okay. So, when he comes in he can complain. . . ." Id. at 10. This is in direct contravention to the aforementioned rules and is unacceptable.

Accordingly, this matter is required to be remanded to the trial court for a new adjudicatory hearing in which the service and notice requirements are complied with and Father may participate. We emphasize that, when making a dependency determination, the trial court is to make a comprehensive

_____

[7] The court chose to find Child dependent in order to prevent the possibility of Mother taking her children from maternal grandparents' home if dependency were dissolved. N.T., 8/15/17, at 6-7.

- 10 -

inquiry into whether Child is without proper care or control, and if so, whether such care and control are immediately available.

Order vacated. Case remanded for a new adjudicatory hearing. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/1/2018